Filed 2/13/26  P. v. Carnes CA2/1

Opinion following order vacating prior opinion
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B338217 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. XSCTA027413) |
| v. | |
| VINCENT LANCE CARNES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed.

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

A jury convicted defendant Vincent Lance Carnes of nine offenses he committed at age 17:  one count of first degree murder, two counts of attempted murder, three counts of second degree robbery, and three counts of attempted second degree robbery.  In 1995, the trial court sentenced Carnes to a total prison term of 58 years 8 months to life.  In May 2024, the trial court denied Carnes's petition for recall and resentencing under Penal Code section 1170, subdivision (d).[1]  The statute provides in relevant part:  "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."  (§ 1170, subd. (d)(1)(A).)  In September 2012, the Legislature enacted the legislation that added the recall and resentencing provisions to section 1170, subdivision (d).  (Applicable Law & Standard of Review, part A, *post*.)

On appeal from the order denying his petition, Carnes argues he is eligible for relief under section 1170, subdivision (d) because he was sentenced to the functional equivalent of a term of life without the possibility of parole (LWOP).  Carnes further argues if we interpret section 1170, subdivision (d) to provide relief only to defendants actually sentenced to LWOP, then the statute violates his constitutional right to equal protection.

We previously issued an opinion affirming the order denying Carnes's petition.  We vacated that decision after Carnes asserted for the first time in a petition for rehearing that his

---

[1] Undesignated statutory references are to the Penal Code.

aggregate prison sentence was not 44 years 8 months to life as he had urged in his appellate briefing, but instead 58 years 8 months to life. (See Factual & Procedural Background, *post*; Discussion, part B, *post*.)

During the pendency of this appeal, Carnes was granted parole. We exercise our discretion to reach the merits of Carnes's appeal regardless of this grant of parole. We also hold that although the trial court sentenced Carnes to an aggregate prison term of 58 years 8 months to life, he is ineligible for resentencing relief under section 1170, subdivision (d). First, the statutory language does not support Carnes's argument; it expressly affords relief only to juvenile offenders actually sentenced to LWOP. Second, Carnes's equal protection challenge to section 1170, subdivision (d) is moot because even if arguendo his sentence were the functional equivalent of LWOP when the trial court initially imposed it, the Legislature's enactment of section 3051, effective January 1, 2014, converted Carnes's prison sentence to a life term with parole eligibility after 25 years. Put differently, because section 3051 modified Carnes's prison term such that it is not functionally equivalent to LWOP, the statute eliminated the basis for his equal protection challenge to section 1170, subdivision (d)(1)(A). Accordingly, we affirm the order denying Carnes's petition for recall and resentencing.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our disposition of this appeal.

---

[2] We derive our Factual and Procedural Background in part from admissions in the parties' appellate briefing and assertions made by the Attorney General that Carnes does not

In June 1994, a jury convicted Carnes of (a) one count of first degree murder; two counts of attempted willful, deliberate, and premeditated murder; and three counts of attempted second degree robbery arising from an incident that occurred on September 14, 1993; and (b) three counts of second degree robbery Carnes perpetrated on September 16, 1993. (See Discussion, part B, *post* [explaining that Carnes was convicted of two counts of attempted willful, deliberate, and premeditated murder]; *People v. Carnes* (Sept. 25, 1996, B094031) [nonpub. opn.] at pp. 2–4 (*Carnes*) [discussing the facts underlying Carnes's convictions].)[3] The jury also found true certain personal firearm use and armed principal allegations. (See *Carnes*, at pp. 2, 4 [referring to these allegations].) Carnes was 17 years old when he committed the offenses in question.

On May 16, 1995, the trial court sentenced Carnes, who was 19 on that date, to an aggregate term of 58 years 8 months to life in prison. (See Discussion, part B, *post* [explaining this calculation of Carnes's aggregate prison sentence].) The court found Carnes was entitled to 910 days of presentence custody credits, consisting of 607 actual days of confinement and 303 local

---

dispute in his reply brief. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 674 [" 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 [criminal case in which the Court of Appeal assumed an assertion made by the respondent was correct because the "defendant did not dispute [the] respondent's claim in his reply"].)

[3] We, sua sponte, take judicial notice of our prior opinion affirming the judgment. (Evid. Code, §§ 452, subd. (d), 459.)

conduct credits. Applying Carnes's presentence custody credits of nearly two and a half years to his sentence, Carnes would be eligible for parole at age 75 (that is, approximately 56 years and 2 months after he was sentenced at age 19) under his original sentence, even without accounting for other credits potentially accruing during his incarceration.[4]

In 1996, we affirmed the trial court's judgment. (*Carnes*, *supra*, B094031, at pp. 1, 12.)

Nearly 20 years later, the Legislature enacted section 3051, thereby rendering certain juvenile offenders eligible for youth offender parole hearings. (See Applicable Law & Standard of Review, part B, *post*.) Pursuant to section 3051, Carnes has been eligible for youth offender parole hearings since 2017, when he was 41 years old.

On December 8, 2023, Carnes, in pro. per., filed a petition for recall and resentencing pursuant to section 1170, subdivision (d). He asserted, inter alia, he had "performed acts that tend to indicate rehabilitation or the potential for rehabilitation . . . ." The trial court appointed counsel for Carnes, and the prosecution filed an opposition. On May 8, 2024, the trial court denied Carnes's petition. The court reasoned Carnes had

---

[4] Carnes's probation report indicates that at the time the police apprehended him for the instant crimes, he was on youth authority parole for one or more prior offenses, which parole was set to expire on March 20, 1997. Neither side claims that Carnes's unexpired youth authority parole impacts the calculation of Carnes's parole eligibility date for the offenses that are the subject of this case.

not been sentenced to a prison term that is the functional equivalent of LWOP.[5]  Carnes timely appealed.

On September 5, 2025, Carnes was granted parole at a youth offender parole suitability hearing.[6]  On September 8, 2025, we requested supplemental briefing on the following question:  Does the fact that Carnes was granted parole on September 5, 2025 moot this appeal?  The parties submitted their supplemental briefing.

On October 7, 2025, we issued an opinion affirming the trial court's order denying Carnes's petition under section 1170, subdivision (d).  On October 14, 2025, Carnes petitioned for rehearing of our decision.  In that petition, he contended our opinion erroneously stated his aggregate prison sentence was

---

[5]  The judicial officer who denied Carnes's petition was not the trial judge who originally sentenced him.

[6]  On September 8, 2025, this court took judicial notice of a page from the Department of Corrections and Rehabilitation's (CDCR's) website that showed Carnes was granted parole on September 5, 2025.  We, sua sponte, take judicial notice of that webpage as of February 11, 2026, which no longer provides the status of Carnes's parole, but instead states, "We cannot find a person with this name or CDCR number."  (See California Incarcerated Records & Information Search for CDCR No. J65342 at <https://ciris.mt.cdcr.ca.gov/results?cdcrNumber=J65342> [as of Feb. 11, 2026], archived at <https://perma.cc/ET5Y-PC82>; Evid. Code, §§ 452, subd. (c), & 459 [authorizing an appellate court to judicially notice acts of the executive department of our state government]; see also Discussion, part A, *post* [indicating the board of parole hearings' and the Governor's respective deadlines by which they could set aside the grant of parole have expired, meaning that Carnes may have been released from prison].)

44 years 8 months to life, even though Carnes represented in his prior appellate briefing that his sentence was 44 years 8 months to life. (See Discussion, part B, *post* [noting that Carnes previously represented his aggregate prison sentence was 44 years 8 months to life, and that the Attorney General asserted the aggregate prison term was 44 years to life].)

On October 16, 2025, we granted rehearing on our own motion, vacated our opinion, and ordered the Attorney General to "respond[ ] to [Carnes's] argument in his rehearing petition that he was sentenced to an aggregate prison term of 58 years 8 months to life, rather than 44 years 8 months to life." On November 13, 2025, the Attorney General filed a supplemental brief contending Carnes's "sentence was 44 years 8 months to life, as described by the parties in their appellate briefs and by this Court in its unpublished opinion filed on October 7, 2025."

On December 10, 2025, we requested further supplemental briefing from the parties on the following questions: "1. Assuming the trial court sentenced . . . Carnes to an aggregate prison term of 58 years 8 months to life, what impact, if any, would that sentence have on his equal protection claim? [¶] 2. Regarding the parole board's September 5, 2025 decision to grant Carnes parole, if (i) . . . section 3041, subdivision (b)'s 120-day deadline by which the board of parole hearings (sitting en banc) may review that decision and (ii) . . . section 3041.2's 30-day deadline by which the Governor may review the board of parole hearings' decision both expire, and neither the board of parole hearings (sitting en banc) nor the Governor disturbs the parole board's decision prior to the expiration of those deadlines, then would the instant appeal be moot?" The parties submitted supplemental briefs in response to that request.

## APPLICABLE LAW AND STANDARD OF REVIEW

**A.    Section 1170, Subdivision (d)**

In September 2012, the Legislature enacted Senate Bill No. 9, which added subdivision (d)(2) to section 1170 and became effective on January 1, 2013.  (Stats. 2012, ch. 828, § 1 (2011–2012 Reg. Sess.) [filed with Sec'y of State on Sept. 30, 2012]; see *People v. Baldwin* (2025) 113 Cal.App.5th 978, 988 (*Baldwin*) [identifying the effective date for the new provision].)  The original version of this provision stated in pertinent part:  "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing."  (Stats. 2012, ch. 828, § 1 [§ 1170, former subd. (d)(2)(A)(i)].)

"Effective January 1, 2022, section 1170, subdivision (d)(2) was renumbered as subdivision (d)(1)."  (*Baldwin, supra,* 113 Cal.App.5th at p. 989, fn. 5, citing Stats. 2021, ch. 731, § 1.3.)  Much like section 1170, former subdivision (d)(2)(A)(i), the current version of the statute provides:  "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."  (§ 1170, subd. (d)(1)(A).)

In turn, subdivision (d)(5) provides in pertinent part, "If the court finds by a preponderance of the evidence that one or more of the statements specified in [subdivisions (d)(2)(A) to

8

(d)(2)(D)] is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (See § 1170, subd. (d)(5).) Of note, subdivision (d)(2)(D) applies when "[t]he defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, . . . using self-study for self-improvement, or showing evidence of remorse." (See *id.*, subd. (d)(2)(D); see also *id.*, subd. (d)(2) [requiring a defendant to include with the petition a statement "describing their remorse and work towards rehabilitation"].)

## B.    Section 3051

"Effective January 1, 2014, the Legislature passed Senate Bill No. 260 (2013–2014 Reg. Sess.), which added section 3051 (youth offender parole hearings) and modified other provisions of the Penal Code. (Stats. 2013, ch. 312, § 4.)" (*People v. Ortega* (2025) 111 Cal.App.5th 1252, 1259 (*Ortega*), review granted Sept. 17, 2025, S292070.) "Section 3051 'requires the Board [of Parole Hearings] to conduct a "youth offender parole hearing" during the 15th, 20th, or 25th year of a juvenile offender's incarceration. [Citation.] The date of the hearing depends on the offender's " 'controlling offense,' " which is defined as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." [Citation.]' . . . [Citation.]" (*Ortega*, at p. 1259, review granted.)

"As originally enacted, section 3051 made youth offender parole hearings available only for offenders incarcerated for

9

crimes committed before the age of 18, and it excluded those sentenced to LWOP." (*People v. Isayev* (2025) 113 Cal.App.5th 1117, 1133 (*Isayev*), review granted Nov. 12, 2025, S292860.) For instance, the original version of section 3051, subdivision (b)(3) provided in pertinent part: "A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing . . . ." (See Stats. 2013, ch. 312, § 4.) The enactment of this provision rendered Carnes eligible for a youth offender parole hearing beginning in 2017. (See Factual & Procedural Background, *ante* [noting that Carnes has been eligible for these hearings since 2017]; Discussion, part B, *post* [indicating that first degree murder, for which Carnes was sentenced to 25 years to life along with a 5-year enhancement, is Carnes's controlling offense because the longest term of imprisonment was imposed for that crime].)

"[T]he Legislature has [since] expanded the reach of [section 3051] by increasing the age threshold for offenders to the age of 25. [Citation.] In addition, . . . the Legislature expanded section 3051 to include juvenile offenders sentenced to LWOP, making them eligible for parole hearings during their 25th year of incarceration." (See *Isayev*, *supra*, 113 Cal.App.5th at pp. 1133–1134, review granted.) "As a result of these amendments, most persons convicted of an offense committed before the age of 26 are now eligible for a youth offender parole hearing after 15, 20, or 25 years in prison, depending on their controlling offense." (*Id.* at p. 1134.) As relevant here, the current version of section 3051, subdivision (b)(3) provides in

10

part: "A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration."

"However, section 3051 continues to exclude certain categories of offenders from the youth offender parole hearing process. For example, the statute categorically excludes offenders sentenced under the 'One Strike' (§ 667.61) or 'Three Strikes' law (§§ 667, 1170.12), and offenders sentenced to LWOP for a controlling offense committed after the person attained 18 years of age. (§ 3051, subd. (h).)" (*Isayev*, *supra*, 113 Cal.App.5th at p. 1134, review granted.) Section 3051 also excludes "an individual to whom this section would otherwise apply, but who, subsequent to attaining 26 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison." (§ 3051, subd. (h).) Carnes does not fall within any of these statutory exceptions to youth offender parole. (See Factual & Procedural Background, *ante* [noting Carnes has been eligible for youth offender parole hearings since 2017].)

## C.    Standard of Review

If the facts underlying a constitutional claim are undisputed, we review the claim de novo. (See *People v. McKee* (2012) 207 Cal.App.4th 1325, 1338 ["[T]he instant constitutional question involved mixed questions of law and fact that are predominantly legal, if not purely legal questions, which are subject to de novo review."].) We also independently review questions of statutory interpretation. (See *In re Lugo* (2008) 164 Cal.App.4th 1522, 1535.) Likewise, we determine questions of

11

mootness de novo so long as the relevant facts are uncontroverted. (See *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174.)

Additionally, "we review the trial court's ruling, 'not the court's reasoning and, if the [trial court's] ruling was correct on any ground, we affirm.' [Citations.]" (*People v. Camacho* (2022) 14 Cal.5th 77, 123–124.)

## DISCUSSION

Carnes argues he is eligible for relief under section 1170, subdivision (d) because, under our high court's decision in *People v. Contreras* (2018) 4 Cal.5th 349, his aggregate prison term of 58 years 8 months to life is the "functional equivalent of" LWOP. In support of this argument, Carnes maintains *Contreras* held "the line for what term of years imposed on a juvenile is the functional equivalent of LWOP is somewhere below 50 years, and may be as low as 40." Carnes further argues if section 1170, subdivision (d) excludes juvenile offenders sentenced to the functional equivalent of LWOP, then the statute "violates constitutional equal protection guarantees." (Citing, inter alia, *People v. Heard* (2022) 83 Cal.App.5th 608, 631 (*Heard*).)

We hold, based on its very terms, that section 1170, subdivision (d) applies only to juvenile offenders sentenced to LWOP.[7] (Discussion, part C, *post*.) We also conclude the

---

[7] We acknowledge, without deciding, that juvenile offenders excluded from youth offender parole hearings under section 3051 who have sentences arguably functionally equivalent to LWOP theoretically could bring an equal protection challenge to section 1170, subdivision (d)(1)(A)'s requirement that juvenile offenders petitioning for relief thereunder had been

12

Legislature mooted Carnes's equal protection claim by enacting section 3051, which converted Carnes's sentence to a life term with the possibility of parole after 25 years. (Discussion, part D, *post*.) For those reasons, we affirm the trial court's denial of Carnes's petition for recall and resentencing under section 1170, subdivision (d).

As a preliminary matter, we exercise our discretion to reach the merits of Carnes's appeal regardless of whether the fact he has been granted parole prevents us from affording him effective relief. (Discussion, part A, *post*.) Regarding another preliminary matter, we conclude the trial court sentenced Carnes to an aggregate state prison term of 58 years 8 months to life and not just 44 years 8 months to life as the Attorney General contends. (Discussion, part B, *post*.) Upon resolving those preliminary issues, we turn to Carnes's arguments that the trial court erred in denying his petition for recall and resentencing under section 1170, subdivision (d). (Discussion, parts C–D, *post*.)

## A. We Exercise Our Discretion To Reach the Merits of This Appeal Without Deciding Whether the Grant of Parole To Carnes Precludes Us From Providing Him With Effective Relief

" '[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief.' [Citation.]" (*People v. Armas* (2024) 107 Cal.App.5th 350, 353.) "For relief to be 'effective,' two requirements must be met. First, the [party] must complain of an ongoing harm. Second, the harm

---

sentenced to LWOP. (See *Ortega*, *supra*, 111 Cal.App.5th at p. 1265 [noting that is an open question], review granted.)

must be redressable or capable of being rectified by the outcome the [party] seeks." (See *In re D.P.* (2023) 14 Cal.5th 266, 276.) " 'Even when a case is moot, [however,] courts may exercise their "inherent discretion" to reach the merits of the dispute.' [Citations.]" (*County of Los Angeles v. Niblett* (2025) 116 Cal.App.5th 454, 464.)

Carnes was granted parole at a youth offender parole suitability hearing held on September 5, 2025. (Factual & Procedural Background, *ante*.) That decision is subject to certain review periods before it can become final. Specifically, within 120 days of a parole panel's decision that an inmate is "suitable for parole," the board of parole hearings, sitting en banc, may review the decision and refer the matter for a rehearing. (See § 3041, subds. (b)(2)–(b)(3); see also § 3051, subd. (d) [providing in pertinent part that § 3041's procedures apply to youth offender parole hearings].)[8] Additionally, the Governor is authorized to "reverse or modify a parole decision of the board" "[d]uring the 30 days following the granting . . . by the board of the parole of an inmate sentenced to an indeterminate prison term based upon a conviction of murder . . . ." (See § 3041.2, subds. (a)–(b).)

---

[8] The version of the CDCR website we judicially noticed on September 8, 2025 does not clarify whether a parole panel or the board of parole hearings, sitting en banc, granted Carnes parole on September 5, 2025. A parole panel appears to have made that decision, given that the governing statutes indicate the board of parole hearings renders parole decisions en banc only after a parole panel has determined whether an inmate is suitable for parole. (See § 3041, subd. (a)(3) [providing for en banc review of a tie vote of the parole panel]; *id.*, subds. (b)(2)–(b)(3) [authorizing en banc review of "any decision of the parole panel finding an inmate suitable for parole"].)

14

The parties dispute whether Carnes's appeal would be rendered moot if the decision granting Carnes parole were to become final upon the expiration of the board of parole hearings' and the Governor's respective review periods. Of note, Carnes contends that if he "prevails [on appeal] and his case is remanded to the juvenile court under Proposition 57, then he could avoid the stain of a conviction if the juvenile court refuses to transfer his case to the adult court . . . ." Without deciding whether Carnes could secure an order vacating his convictions if he prevailed on appeal, we exercise our discretion to reach the merits of Carnes's statutory construction and equal protection claims in this appeal out of "an abundance of caution . . . ." (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488–1489; see also *id.* at p. 1483 [indicating a reviewing court may exercise its discretion to review a moot appeal in order "to avoid any possible collateral prejudice" to the appellant].)

## B. Carnes Was Sentenced to an Aggregate State Prison Term of 58 Years 8 Months to Life

In his opening brief, Carnes asserted the trial court had sentenced him to an aggregate prison term of 44 years 8 months to life. Similarly, the Attorney General maintained in the respondent's brief that Carnes's aggregate prison term was "44 years to life." Consistent with Carnes's admission, we stated in our prior opinion that the trial court had sentenced him to a total prison term of 44 years 8 months to life, and affirmed the order denying Carnes's petition for resentencing.

Carnes petitioned for rehearing of our decision, arguing for the first time that the trial court sentenced him to an aggregate prison term of 58 years 8 months to life. Carnes asserted his prior 44-year-8-month-to-life aggregate sentence calculation

15

failed to account for two *consecutive* sentences of 7-years-to-life the trial court imposed for his two attempted murder convictions, that is, counts 2 and 3. We explained in our prior opinion that although the minute order for the sentencing hearing and the abstract of judgment provided that Carnes was sentenced to " 'a total determinate term of 14 years, 8 months and a total indeterminate term of 30 years to life, *plus two life terms*' " (italics added by us in our prior opinion), the parties "d[id] not dispute that the trial court either stayed the two additional life terms or ordered Carnes to serve them concurrently with his indeterminate prison term of 30 years to life." Carnes has apparently retreated from that position in his petition for rehearing. For the reasons set forth below, we conclude Carnes's new calculation of his aggregate sentence is correct.

The minute order for the May 16, 1995 sentencing hearing states Carnes was "sentenced to state prison for a total determinate term of 14 years, 8 months [for the second-degree robbery convictions, i.e., counts 7, 8, and 9,] and a total indeterminate term of 30 years to life, plus two life terms."[9] The two life terms referenced in the minute order correspond to the life term sentences imposed for Carnes's convictions for attempted willful, deliberate, and premeditated murder, i.e., counts 2 and 3, given that the only other life sentence the trial court had imposed was the prison term of 30 years to life for the first degree murder conviction in count 1 (i.e., 25 years to life and a consecutive 5-year prison term for an enhancement for that count). Likewise, the abstract of judgment recites that Carnes

---

**9** The reporter's transcript for Carnes's sentencing hearing is not in the record before us.

16

was "sentenced for a total determinate term of 14 years, 8 months and a total indeterminate term of 30 years to life, plus two life terms." The abstract also shows the two additional life terms were imposed for counts 2 and 3 (because the other life term, for 30 years to life, was imposed for count 1), and that the sentences for counts 2 and 3 were "consecutive" to Carnes's other prison terms. Neither the minute order for the sentencing hearing nor the abstract of judgment specifies the minimum amount of time Carnes would have to serve in prison on counts 2 and 3 before being eligible for parole.[10]

Section 664, subdivision (a) provides that a person convicted of "attempted . . . willful, deliberate, and premeditated murder . . . shall be punished by imprisonment in the state prison for life with the possibility of parole."[11] Because section 664 does not prescribe the minimum term a defendant must serve for attempted willful, deliberate, and premeditated murder before that individual may be released on parole, we apply section 3046, subdivision (a), which provides, "An inmate imprisoned under a life sentence shall not be paroled until he or she has served . . . [¶] . . . [a] term of at least seven calendar years."[12] In turn,

---

[10] Pursuant to section 654, the trial court stayed the sentences (including the enhancements) for Carnes's attempted second degree robbery convictions, that is, counts 4, 5, and 6.

[11] (See § 664, subd. (a); see also Stats. 1986, ch. 519, § 2, p. 1859 [version of § 664 in effect when Carnes committed his offenses in 1993, subd. 1 of which likewise provided the punishment for this offense was a prison sentence of life with the possibility of parole].)

[12] (See § 3046, subds. (a) & (a)(1); see also Stats. 1988, ch. 214, § 1 [version of § 3046 in effect until 2000, which contains essentially the same statutory language as the current version of

17

section 3046, subdivision (b) provides that if, as is the case here, "two or more life sentences are ordered to run consecutively to each other . . . , an inmate so imprisoned shall not be paroled until he or she has served the term specified in subdivision (a) on each of the life sentences that are ordered to run consecutively."[13] In accordance with that provision, under his original sentence, Carnes was required to serve at least 44 years in prison on his indeterminate sentence before he could be released (i.e., 30 years on count 1, 7 years on count 2, and 7 years on count 3),[14] which indeterminate sentence was consecutive to the determinate

---

subds. (a) & (a)(1)]; *People v. Salas* (2001) 89 Cal.App.4th 1275, 1280 ["Absent a determination the accused is subject to the enhanced sentencing provisions . . . of some other provision of law, a sentence for willful, deliberate, and premeditated murder is for a life term with a minimum wait for parole of seven years," citing § 3046, subd. (a)(1)].)

[13] (See § 3046, subd. (b); see also Stats. 1988, ch. 214, § 1 [version of § 3046 in effect until 2000, which contains essentially the same statutory language as the current version of subd. (b)].)

[14] (See *People v. Rodriguez* (2019) 40 Cal.App.5th 194, 200–202 [noting that under § 3046, subd. (b), the minimum period of confinement for each life sentence is aggregated to determine the defendant's minimum parole eligibility; there, the Court of Appeal explained that if the defendant had been sentenced to 15 years to life in prison for attempted willful, deliberate, and premeditated murder by virtue of a gang enhancement provided under section 186.22, subd. (b)(5), along with a consecutive sentence of 25 years to life for a gun enhancement under section 12022.53, subd. (d), "his sentence would have been two indeterminate life terms with parole eligibility after 40 years"].)

18

prison term of 14 years 8 months.[15]  Accordingly, we agree with Carnes that the trial court sentenced him to an aggregate prison term of 58 years 8 months to life.

The Attorney General counters that Carnes's "sentences of life imprisonment on counts 2 and 3 do not add 14 years to his aggregate sentence."  To support this position, the Attorney General cites a footnote in *People v. Wong* (2018) 27 Cal.App.5th 972 (*Wong*) in which the Court of Appeal remarked that characterizing a sentence for attempted willful, deliberate, and premeditated murder as " '7 years to life' " is "*incorrect*" because, although "*there is a minimum parole eligibility of seven years* [for that offense], . . . *that is not part of the sentence that is pronounced.*"  (Quoting *Wong*, at p. 977, fn. 4, italics added by the Attorney General.)  The *Wong* court stated, "[A] more accurate statement of the sentence for attempted murder is simply 'life, plus' any determinate enhancements."  (*Wong*, at pp. 977–978, fn. 4.)

Notwithstanding the Attorney General's argument to the contrary, the *Wong* court did not hold the minimum parole eligibility period of seven calendar years for attempted willful, deliberate, and premeditated murder should not be aggregated with terms imposed for other offenses to calculate the total amount of time a defendant must serve in prison before he or she is eligible for release on parole.  (See *Wong*, *supra*, 27 Cal.App.5th at pp. 977–978, fn. 4.)

The issue in *Wong* was whether the trial court erred in imposing three 1-year enhancements for use of a deadly weapon

---

[15] (*Carnes*, *supra*, B094031, at pp. 9–11 [explaining that the trial court "impos[ed Carnes's] indeterminate terms consecutive to his determinate term" of 14 years 8 months].)

19

where there was a single attempted murder charge and the defendant used three different weapons in committing that crime.  (See *Wong, supra*, 27 Cal.App.5th at pp. 975, 983–984.)  In the quotation on which the Attorney General relies, the *Wong* court seems to merely distinguish between (1) an offense for which the minimum period of confinement before a defendant may be paroled is seven calendar years pursuant to section 3046, subdivision (a)(1) (e.g., willful, deliberate, and premeditated murder) and (2) an offense carrying a life term with a minimum period of confinement prescribed by another statute (e.g., the *Wong* court noted that "second degree [murder is] punish[able] by imprisonment in the state prison for a term of 15 years to life' ").  (See *Wong*, at p. 977, fn. 4.)  Additionally, because the defendant in *Wong* had been sentenced to only one life term with certain consecutive determinate enhancements (see *id.* at pp. 975–977), the case did not involve section 3046, subdivision (b)'s requirement that a court aggregate a defendant's minimum parole eligibility for each consecutively imposed life sentence to determine the earliest potential release date for the defendant. *Wong* is thus not instructive.

The Attorney General also cites *People v. Robbins* (2018) 19 Cal.App.5th 660 for the proposition that the "sentence for attempted murder is life, [and] not seven years to life."  (Citing *Robbins*, at p. 678.)  In *Robbins*, the trial court sentenced the defendant to LWOP for first degree murder with the special circumstance of lying in wait, a consecutive term of 25 years to life for a firearm enhancement on that count, and a concurrent term of seven years to life for attempted murder committed willfully and with premeditation and deliberation.  (See *Robbins*, at pp. 664, 677–678.)  The Attorney General conceded the

20

defendant's "sentence for attempted murder should be life, rather than seven years to life." (See *id.* at p. 678.) In accordance with the Attorney General's concession, the Court of Appeal reversed the defendant's "concurrent term of seven years to life for the attempted murder conviction" and "direct[ed] the trial court to impose a concurrent term of life with the possibility of parole." (See *ibid.*) Because the trial court in *Robbins* had ordered the defendant to serve his sentence for attempted murder *concurrently* with (and not *consecutive* to) his LWOP-plus-25-year-to-life sentence for first degree murder, the seven-year minimum parole eligibility period for the defendant's sentence for attempted murder had no impact on the calculation of his aggregate prison sentence. Thus, *Robbins* is inapposite.

In sum, we conclude the trial court sentenced Carnes to an aggregate prison term of 58 years 8 months to life.

## C. By Its Terms, Section 1170, Subdivision (d) Does Not Apply Because Carnes Was Not Sentenced to LWOP

Although Carnes acknowledges "*Contreras* . . . is an Eighth Amendment case," he argues its "holding controls here" "because the Eighth Amendment concerns in *Contreras* and the Legislature's objectives behind enacting section 1170, subdivision (d)(1) are inextricably linked." Citing certain aspects of section 1170, subdivision (d)'s legislative history, Carnes maintains, "Both the Eighth Amendment challenge in *Contreras* and section 1170, subdivision (d)(1) address concerns about a juvenile offender's ability to have a meaningful opportunity for release as discussed in *Graham v. Florida* (2010) 560 U.S. 48." Carnes then deduces, "[I]t makes no sense to reject the High Court['s] insights on juvenile offender de facto LWOP from the *Contreras* case when evaluating whether somebody should get

21

the benefit of a law specifically enacted to broadly remediate harm to juveniles . . . ."

Carnes seems to be arguing we should construe section 1170, subdivision (d) as authorizing petitions for recall and resentencing by defendants who were sentenced to the functional equivalent of LWOP as that term is used in *Contreras*. As he represents in the standard of review section of his opening brief, this appeal concerns the proper "interpretation and application of the statute."

By its express terms, section 1170, subdivision (d)(1)(A) applies to "a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole . . . ." Thus, the statutory text is not reasonably susceptible to Carnes's interpretation. Given the express terms of section 1170, subdivision (d)(1)(A), we do not address the statute's legislative history. (See *People v. Watie* (2002) 100 Cal.App.4th 866, 884 [" 'When the words [of a statute] are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history.' "]; see also *Ortega, supra,* 111 Cal.App.5th at p. 1263 [holding that the plain language of § 1170, subd. (d)(1)(A) " 'limits eligibility . . . to juvenile offenders sentenced to an explicitly designated life without parole term' "], review granted.)

Carnes also appears to argue the Legislature's failure to make certain amendments to section 1170, subdivision (d) after Division One of the Fourth District decided *Heard* in 2022 supports his interpretation of the statute.

In *Heard*, the defendant was sentenced to an aggregate prison term of 103 years to life upon being convicted of two

counts of attempted murder committed at age 15 and one count of voluntary manslaughter committed at 16.  (See *Heard*, *supra*, 83 Cal.App.5th at pp. 612, 629.)  The trial court denied the defendant's petition for relief under section 1170, subdivision (d) because "he was not sentenced to an explicitly designated term of life without the possibility of parole." (*Heard*, at p. 612.)  On appeal, the reviewing court rejected the defendant's assertion subdivision (d) of section 1170 "should be interpreted to apply . . . to a juvenile offender . . . who has been sentenced to multiple terms that are the functional equivalent of life without parole" because the statute "limits eligibility . . . to juvenile offenders sentenced to an explicitly designated life without parole term."  (See *Heard*, at pp. 612, 622, 626.)

*Heard*, however, also held the statute's exclusion of the defendant from eligibility for resentencing relief violated the defendant's constitutional right to equal protection of the laws. (See *Heard*, *supra*, 83 Cal.App.5th at pp. 612, 622.)  The Court of Appeal reasoned the defendant was sentenced to a "de facto" LWOP sentence and there was no rational basis "for making juveniles sentenced to an explicitly designated life without parole term, but not juveniles sentenced to the functional equivalent of life without parole, eligible to petition for resentencing under section 1170, subdivision (d)(1)."  (See *Heard*, at pp. 629, 633.)  To remedy this constitutional violation, the *Heard* court reversed the denial order and instructed the trial court on remand to reconsider the defendant's petition.  (See *id.* at p. 634.)[16]

---

[16]  In our Discussion, part D, *post*, we explain that Carnes's equal protection claim has become moot with the Legislature's enactment of section 3051.

Carnes argues, "Since *Heard* was decided in 2022, the Legislature has continued to amend section 1170 but has not prohibited juvenile offenders with de facto LWOP from relief under the statute." In essence, Carnes seems to contend (1) *Heard* interpreted section 1170, subdivision (d) to afford relief to juvenile offenders with sentences functionally equivalent to LWOP, and (2) the Legislature tacitly agreed with *Heard*'s interpretation by failing to amend the statute to prohibit such juvenile offenders from petitioning for relief.

*Heard*, however, found section 1170, subdivision (d)(1)(A) did *not* apply to a defendant who did not receive an express LWOP sentence. (See *Heard*, *supra*, 83 Cal.App.5th at p. 634, fn. 17.) Contrary to Carnes's argument, the Legislature cannot be deemed to have acquiesced to a statutory interpretation *Heard* never adopted.

Similarly, Carnes claims the following passage from *People v. Bagsby* (2024) 106 Cal.App.5th 1040 establishes that in amending section 1170 after *Heard*, the Legislature expressed its intent to allow defendants with sentences functionally equivalent to LWOP to seek resentencing: "[W]e have additional evidence of legislative intent in the Legislature's response to *Heard*. Since 2022, when *Heard* was decided, the Legislature has continued to amend section 1170. [Citations.] Had the Legislature preferred for the equal protection violation we identified in *Heard* to be remedied by striking subdivision (d)(1)(A) from section 1170, it could have accomplished that result itself. Instead, it has left the provision intact. We take this as further evidence it does not prefer for the provision to be stricken." (*Bagsby*, *supra*, 106 Cal.App.5th at p. 1063.)

24

Carnes takes these observations out of the context in which *Bagsby* made them. *Bagsby* made these remarks to address the Attorney General's argument that the proper remedy for the equal protection violation identified in *Heard* was to strike section 1170, subdivision (d)(1)(A) and deny all juvenile offenders resentencing relief under the statute, instead of affording sentencing relief to juvenile offenders sentenced to a prison term functionally equivalent to LWOP. (See *Bagsby*, *supra*, 106 Cal.App.5th at pp. 1054, 1062–1063.) *Bagsby* rejected that argument on the ground that if the Legislature had preferred to deny resentencing relief to all juvenile offenders, then it would have repealed the statute. (See *id.* at pp. 1062–1063.) The *Bagsby* court did not conclude the Legislature intended the statute to apply to juvenile offenders sentenced to the functional equivalent of LWOP. (See *ibid.*)

In sum, because Carnes was not sentenced to LWOP, section 1170, subdivision (d) itself does not authorize him to petition for recall and resentencing.

**D.	The Legislature's Enactment of Section 3051 Moots Carnes's Claim That Denying Him Relief Under Section 1170, Subdivision (d) Violates His Right to Equal Protection**

Carnes maintains the "exclusion of [juvenile] offenders[,]" who, like himself, were allegedly "sentenced to the functional equivalent of LWOP[,] violates equal protection because there is no rational basis to deny" resentencing relief to those juvenile offenders but afford it to juvenile offenders who were sentenced to LWOP. (Boldface & some capitalization omitted.) As explained below, section 3051 mooted Carnes's equal protection claim by converting his aggregate prison term to a sentence that is not the

25

functional equivalent of LWOP.  Accordingly, the factual predicate upon which his equal protection claim hinges (i.e., that he has an aggregate prison term of 58 years 8 months to life, which sentence he asserts is functionally equivalent to LWOP) no longer exists.

Our colleagues in Division Three of the Fourth District rejected an equal protection challenge to section 1170, subdivision (d)(1)(A) raised by a juvenile offender who was sentenced to a prison term of 42-years-to-life but later became eligible for youth offender parole hearings by virtue of the enactment of section 3051.  (See *Ortega, supra*, 111 Cal.App.5th at pp. 1255–1256, 1261–1262, review granted.)  According to the *Ortega* court, section 3051 had, "[b]y operation of law[,]" "converted" the juvenile offender's prison term to " 'a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration.  Such a sentence is neither LWOP nor its functional equivalent. . . .' [Citation.]"  (See *Ortega*, at pp. 1256, 1261–1262.)  *Ortega* further reasoned, "[B]ecause [the juvenile offender was] not serving a sentence that [was] the functional equivalent of life in prison without the possibility of parole," the defendant's "constitutional equal protection claim [was] moot . . . ."  (See *id.* at p. 1262.)  Consequently, the Court of Appeal affirmed the trial court's denial of the juvenile offender's petition for resentencing under section 1170, subdivision (d). (See *Ortega*, at pp. 1256, 1265.)

Carnes's equal protection claim is likewise moot.  Although the trial court sentenced Carnes to an aggregate prison term of 58 years 8 months to life in 1995 (see Factual & Procedural Background, *ante*; Discussion, part B, *ante*), the Legislature's subsequent enactment of section 3051 converted his sentence to a

26

life term with parole eligibility after 25 years of incarceration (see Factual & Procedural Background, *ante*; Applicable Law & Standard of Review, part B, *ante*), which is not the functional equivalent of LWOP.  Section 3051's modification of Carnes's sentence thus moots his assertion the Legislature lacked a rational basis for excluding him from a resentencing scheme for which only those juvenile defendants actually sentenced to LWOP are eligible.[17]

Citing *Heard*, Carnes counters that he is " 'similarly situated with the juvenile offenders whose sentences make them eligible to seek resentencing' " under subdivision (d)(1)(A) of section 1170 because the statute " 'uses the phrase "was sentenced" and refers to the past' "; in other words, the juvenile offender's original sentence determines whether that individual is eligible for resentencing under the statute.  (Quoting *Heard*, *supra*, 83 Cal.App.5th at p. 629, italics omitted by Carnes.) Carnes also cites *People v. Cabrera* (2025) 111 Cal.App.5th 650 for the proposition that " 'section 3051 eligibility does not defeat a defendant's section 1170[, subdivision] (d)(1)(A) petition.' " (Quoting *Cabrera*, at p. 653.)  We respectfully part ways as to this conclusion in *Heard* and *Cabrera*.

---

[17] We acknowledge that the Attorney General advocates: "[I]f the Court finds that [Carnes] was . . . sentenced to more than 58 years to life, the matter should be remanded for further proceedings on [his] . . . petition" because Carnes is "entitled to seek recall of his sentence and resentencing relief . . . in light of his right to equal protection of the laws."  Because Carnes's equal protection claim is moot, we reject the Attorney General's concession that Carnes is entitled to relief on that claim. (See *People v. Kim* (2011) 193 Cal.App.4th 836, 847 ["We are not required to accept the Attorney General's concession . . . ."].)

Our colleagues in the Third District held, "[T]he focus of section 1170, subdivision (d)(1)[ ] is the sentence being served *at the time the petition for recall and resentencing is filed,* not whatever sentence may have been imposed at the original sentencing hearing." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1142, review granted.)  *Isayev* explained, "section 1170, subdivision (d)[ ] was 'inspired by concerns regarding sentences of life without parole for juvenile offenders' " and had been "enacted . . . to provide (certain) juvenile offenders serving LWOP terms an avenue 'to seek recall of their sentences and resentencing to a term that includes an opportunity for parole.' [Citation.]"  (See *Isayev*, at p. 1142.)  "To . . . assume that the Legislature created a procedure for recalling and resentencing juvenile offenders sentenced to LWOP even if that sentence was modified or vacated on direct appeal or via postconviction collateral attack" would be "inconsistent with [that] legislative intent."  (See *ibid.*)  Furthermore, *Isayev* did "not ascribe much significance to the fact that the statute refers to the offender's sentence in the past tense" because, "[r]elative to the time when a petition for recall and resentencing is filed, a sentence will have always been entered in the past."  (See *id.* at p. 1143.)  We agree with *Isayev*'s construction of section 1170, subdivision (d)(1)(A).[18]

---

[18]  (See also *People v. Lofchie* (2014) 229 Cal.App.4th 240, 251 [" ' "We must select the construction [of a statute] that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]  The legislative purpose 'will not be sacrificed to a literal construction' of any part of the statute."].)

In sum, although we exercise our discretion to reach the merits of Carnes's appeal notwithstanding the parole panel's decision to grant him parole, we conclude Carnes is not eligible to petition for recall and resentencing and that his equal protection challenge to section 1170, subdivision (d)(1)(A)'s eligibility limitation was rendered moot by the passage of section 3051. Ergo, we affirm the trial court's order denying Carnes's petition.

## DISPOSITION

We affirm the trial court's May 8, 2024 order denying defendant Vincent Lance Carnes's petition for recall and resentencing under Penal Code section 1170, subdivision (d).

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.